LEGAL AID SOCIETY OF SAN DIEGO, INC.
  Branden G. Butler (SBN 265127)
  brandenb@lassd.org
1764 San Diego Avenue, Suite 200
San Diego, CA 92110
Tel:  (619) 471-2623
Fax:  (619) 471-2788

BRANCART & BRANCART
  Christopher Brancart (SBN 128475)
  cbrancart@brancart.com
Post Office Box 686
Pescadero, CA 94060
Tel:  (650) 879-0141
Fax:  (650) 879-1103

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JASON FORD,** | Case No. '13CV0996 W  RBB |
| Plaintiff, | **COMPLAINT; DEMAND FOR TRIAL BY JURY** |
| vs. | |
| **AFFIRMED HOUSING GROUP; General Partner of STUDIO 15 HOUSING PARTNERS, L.P.; STUDIO 15 HOUSING PARTNERS, L.P.; SOLARI ENTERPRISES, INC.; and LAURA DORVAL,** | |
| Defendants. | |

## I. INTRODUCTION

1. Plaintiff Jason Ford brings this action against the owners and operators of the Studio 15 apartment complex located in San Diego, California, alleging discrimination on the basis of disability in violation of the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, and related state laws.

## II. JURISDICTION AND VENUE

2. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States. This Court has

supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine plaintiff's state law claims because those claims are related to plaintiff's federal law claims and arise out of a common nucleus of related facts. All of plaintiff's claims form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper under 28 U.S.C. § 1391 in that the claims alleged herein arose within San Diego County, California.

### III. PARTIES

4. Plaintiff Jason Ford ("Ford") is quadriplegic, making him a person with a disability within the meaning of the federal Fair Housing Act, 42 U.S.C. § 3602(h), the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), the California Fair Employment and Housing Act ("FEHA"), Government Code §§ 12926 and 12926.1, the California Unruh Civil Rights Act ("Unruh Act"), Civil Code § 51, the California Disabled Persons Act, Civil Code § 54.1, and Civil Code § 3345.

5. Defendant Studio 15 Housing Partners, L.P. and its general partner Affirmed Housing Group own and operate the Studio 15 Apartments ("Studio 15"). Studio 15 is a dwelling within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b), a housing accommodation within the meaning of FEHA, Government Code § 12927(d), and the Disabled Persons Act, Civil Code § 54.1(b)(2), and a business establishment under the Unruh Act, Civil Code § 51.

6. Defendant Solari Enterprises, Inc., a real estate management company, operates Studio 15 on behalf of Studio 15 Housing Partners, L.P.

7. Defendant Laura Dorval (Dorval) acts as the managing agent of Studio 15 on behalf of the other defendants.

8. Each defendant was, at all times relevant, the agent, employee or representative of each other defendant. Each defendant, in doing the acts or in omitting to act as alleged in this complaint, was acting within the course and scope of his actual or apparent authority pursuant to such agency, or the alleged acts or

omissions of each defendant as agent were subsequently ratified and adopted by each defendant as principal.

## IV.  FACTS
### A.  INTRODUCTION

9. Defendants, acting individually, collectively and through agents, have committed the following discriminatory housing practices, with the purpose or effect of excluding physically disabled persons from the occupancy of dwellings at Studio 15:

   a. Refusing to rent a dwelling because of disability;
   b. Communicating that a person would not be compatible with a dwelling or its existing residents because of disability;
   c. Making statements indicating a limitation, preference or discrimination, or the intent to discriminate, based on disability;
   d. Refusing to process an application for rental of a dwelling because of disability;
   e. Refusing to grant requests for reasonable modifications;
   f. Interfering with use and enjoyment of a dwelling; and,
   g. Aiding and abetting the commission of discriminatory housing practices by other persons, including agents and employees.

10. Defendants injured Ford by committing each of these discriminatory housing practices; accordingly, Ford is an aggrieved person under the Fair Housing Act, 42 U.S.C. § 3602(i), the Rehabilitation Act, 29 U.S.C. § 794a, and FEHA, Government Code § 12927(g).

### B.  STUDIO 15

11. Studio 15 Apartments is a five-story apartment complex located in

downtown San Diego. The complex provides 273 studio apartments restricted to low income persons. Studio 15 was developed with a mixture of private and public funding, including federal Low Income Housing Tax Credits allocated by the California Tax Credit Allocation Committee, a residual receipts loan made through the Redevelopment Agency of the City of San Diego, and a subsidy from the Federal Home Loan Bank of San Francisco through its Affordable Housing Program. On June 23, 2009, Affirmed Housing recorded a notice of completion with the San Diego County Recorder's Office indicating that the Studio 15 project was completed on May 1, 2009.

12. In connection with obtaining the Affordable Housing Program ("AHP") subsidy from the Federal Home Loan Bank of San Francisco, Affirmed Housing Group and Studio 15 Housing Partners, L.P. agreed to comply with the AHP Regulations set forth in 12 C.F.R. Part 951 (now 12 C.F.R. Part 1291). The AHP Regulations require that, in order to be eligible for an AHP subsidy, the proposed project "must comply with applicable federal and state laws on fair housing and housing accessibility, including but not limited to, the Fair Housing Act [and] the Rehabilitation Act of 1973." 12 C.F.R. § 951.5(c)(11) (now 12 C.F.R. § 1291.5(c)(11)).

13. Under the Rehabilitation Act, Studio 15 is required to comply with the Uniform Federal Accessibility Standards. Five percent of the total dwelling units at Studio 15 must meet the requirements for accessibility for persons with mobility impairments, and an additional two percent must be accessible for people with hearing or vision impairments. 24 C.F.R. § 8.22(a) and (b). Plaintiff is informed and believes and thereupon alleges that Studio 15 fails to comply with those federal standards. Under the Rehabilitation Act, Studio 15 is required to make and pay for reasonable structural modifications needed by applicants with disabilities who seek to reside in the complex.

14. Studio 15 is a program within the meaning of the Rehabilitation Act.

29 U.S.C. § 794(b).  In the alternative, Affirmed Housing Group and Studio 15 Housing Partners, L.P. agreed to comply with the fair housing and accessibility requirements of the Rehabilitation Act in order to obtain the Affordable Housing Program subsidy, and plaintiff is a third-party beneficiary of that agreement.

### C.  JASON FORD

15.     Jason Ford has been quadriplegic since a motorcycle accident at age 20.  He uses a power wheelchair for mobility and other assistive devices in his daily activities.  He maintains an active life, including pursuing his education at San Diego City College.

16.     In November 2009, Ford entered Edgemoor Hospital, a skilled nursing facility operated by the County of San Diego in Santee, California, where he undertook rehabilitation and learned skills needed to achieve his goal to live independently.

17.     By April 2012, Ford was ready to live independently and began to plan his discharge from Edgemoor to relocate to his own dwelling.  Veronica McBride, a social worker with Edgemoor, and Monica Barraza, an independent living specialist with the non-profit Access to Independence, assisted Ford to find suitable housing and work through the lengthy discharge process.

### D.  JASON FORD ATTEMPTS TO RENT AT STUDIO 15

18.     In June 2012, Ford and Edgemoor social worker McBride toured the Studio 15 complex and viewed individual units.  Ford and McBride told the Studio 15 rental agent that Ford would need disability-related modifications to his unit.  Specifically, he needed modification of the bathroom to install a roll-in shower and modification of the unit's front door to install a keyless entry control.  The Studio 15 rental agent said that such modifications would not be a problem.  Ford submitted a rental application and credit check fee.  He looked forward to moving to Studio 15.  Among the attributes that appealed to Ford was Studio 15's location near San Diego City College.

19. On June 19, 2012, Studio 15 sent a "Letter of Intent" signed by manager Laura Dorval indicating that, upon approval of his application, Ford would move into unit 132 at Studio 15. The following day, June 20, Dorval called Ford and left a voicemail stating that Ford's application had been approved and that he could move in as early as July 2, 2012.

20. One day later, on June 21, independent living specialist Barraza with Access to Independence called Dorval at Studio 15 and left the first of a number of messages about installing the modifications needed to enable Ford to occupy his unit at Studio 15.

21. A week later, Ford's July 2 discharge date had to be postponed because the modifications to his unit had not been made. At the beginning of July, Ford's doctor wrote discharge orders authorizing Ford to be released from Edgemoor on July 16, anticipating his move to Studio 15 on that day.

22. On July 5, Ford received a telephone call from Studio 15's Dorval. She expressed concerns that Ford's disability would make him unable to vacate the building in case of fire. Ford explained that he would have a 24-hour live-in aide when he moved into Studio 15 and would not be alone.

23. The next day, July 6, Dorval called Edgemoor social worker McBride and notified her of Studio 15's concerns about Ford's safety in case of fire. Dorval said she could not commit that someone could check on Ford in case of a fire alarm. Dorval also called Barraza at Access to Independence and told her that she, Dorval, would need to get approval for Ford's bathroom modification from the corporate office.

24. Three days later, on July 9, Barraza contacted Studio 15 to make arrangements to pay Ford's rent and deposit. The agent told Barraza that she was not sure whether they were going to proceed with Ford's move-in. Later that day, Barraza emailed Dorval, who responded that Barraza should hold off paying the rent and deposit because Dorval was checking with corporate to see if they would

1 proceed.

2   25.   The next day, July 10, Barazza again contacted Studio 15 about paying Ford's rent and deposit. Dorval told her to hold off because she still needed to get approval from her regional manager and the owners of Studio 15. Barraza advised Dorval that if Studio 15 needed estimates on the work to be done, she could send someone over. Barraza asked whether they would be able to get access to the unit. Dorval did not respond.

   26.   During that same time period, Ford's plumber contacted Dorval about arranging access to the Studio 15 unit to inspect the proposed modification job. Dorval refused to allow him access to the unit on the ground that Ford had not yet been approved to move in. Dorval also opined that she did not think that Ford could afford to pay for the modification job. The plumber assured Dorval that payment for the job and materials was taken care of and was not an issue. Before the call ended, Dorval reiterated her refusal to allow access to Ford's intended unit on the ground that Ford had not yet been approved for move in.

   27.   Meanwhile, Dorval spoke with Ford and told him that his move in date would be pushed back until she heard from corporate. On July 12, Dorval called McBride at Edgemoor and told her that Ford could not move into his dwelling at Studio 15 because she had not yet received approval for the modifications. As a result, Ford's discharge orders for July 16 had to be cancelled.

   28.   A week later, on July 19, McBride called Dorval at Studio 15 asking about the status of Ford's modification request. Dorval told McBride that Ford would not be allowed to move into Studio 15. Dorval described Ford as "too disabled" and as "high liability" due to his disability. Dorval also told McBride that Ford's modification request had been denied.

   29.   Five days later, on July 24, 2012, Studio 15's management company, defendant Solari Enterprises, Inc., issued a "Letter of Ineligibility" addressed to

1  Ford, stating that "per your conversation with my community manager we are
2  dropping your file." The conversation referred to was the one between Dorval and
3  McBride, the Edgemoor social worker.
4      30.   On July 30, Ford's doctor issued new orders discharging Ford from
5  Edgemoor to a room in a boarding house in Bonita, located more than twenty
6  miles from his college.

### E.  INJURIES

8      31.   By reason of defendants' unlawful acts or practices, plaintiff has
9  suffered emotional distress, including humiliation, mental anguish, and attendant
10 bodily injury, violation of his civil rights, loss of dignity, embarrassment and
11 otherwise sustained injury.  Defendants deprived Ford of an important housing
12 opportunity, denying him the use and enjoyment of a dwelling that would have
13 enabled him to live independently in a location suited to his needs.  Accordingly,
14 Ford is entitled to compensatory damages.
15     32.   Defendants denied Ford his rights under the Unruh Act and Disabled
16 Persons Act, entitling Ford to actual and statutory damages.
17     33.   In doing the acts of which plaintiff complains, defendants acted with
18 oppression, fraud and malice, and with wanton or reckless disregard of plaintiff's
19 federally protected rights.  Accordingly, Ford is entitled to punitive damages.
20     34.   In engaging in the unfair acts of which plaintiff complains,
21 defendants knew that their conduct was directed at a disabled person, Ford, and
22 that conduct caused Ford harm, entitling him to a trebling of penalties and
23 statutory and punitive damages pursuant to Civil Code § 3345.
24     35.   There now exists an actual controversy between defendants and Ford
25 regarding defendants' duties under the federal and state fair housing laws.
26 Accordingly, Ford is entitled to declaratory relief.
27     36.   Unless enjoined, defendants will continue to engage in the unlawful
28 acts and the pattern or practice of discrimination described in this complaint.  Ford

has no adequate remedy at law. He now suffers and will continue to suffer irreparable injury from defendants' discriminatory acts against persons with physical disabilities unless relief is provided by this Court. Accordingly, Ford is entitled to injunctive relief.

## V. CLAIMS

### A. FIRST CLAIM
### [Fair Housing Act]
*Plaintiff v. All Defendants*

37. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

38. Defendants injured Ford by committing discriminatory housing practices in violation of the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.*

### B. SECOND CLAIM
### [Rehabilitation Act]
*Plaintiff v. Affirmed Housing Group and Studio 15 Housing Partners, L.P.*

39. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

40. Defendants injured Ford by discriminating against him in the operation of Studio 15 in violation of the Rehabilitation Act, 29 U.S.C. §794. Defendants also injured Ford by failing to comply with the accessibility requirements of the Rehabilitation Act in the construction and operation of Studio 15.

### C. THIRD CLAIM
### [California Fair Employment and Housing Act]
*Plaintiff v. All Defendants*

41. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

42. Defendants injured Ford by committing unlawful housing practices in

violation of the California Fair Employment and Housing Act, California Government Code § 12900, *et seq.*

### D.  FOURTH CLAIM
**[California Unruh Civil Rights Act]**

*Plaintiff v. All Defendants*

43. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

44. Defendants injured Ford in violation of the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*

### E.  FIFTH CLAIM
**[California Disabled Persons Act]**

*Plaintiff v. All Defendants*

45. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

46. Defendants injured Ford in violation of the Disabled Persons Act, California Civil Code § 54.1, by denying him full and equal access to housing accommodations at Studio 15.

### F.  SIXTH CLAIM
**[Breach of Contract]**

*Plaintiff v. Affirmed Housing Group and Studio 15 Housing Partners, L.P.*

47. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

48. Defendants Affirmed Housing Group and Studio 15 Housing Partners, L.P. have breached their contract with the Federal Home Loan Bank of San Francisco to construct and operate Studio 15 in compliance with the Rehabilitation Act in exchange for receipt of the Affordable Housing Program subsidy to build the project.

49. Plaintiff is a third-party beneficiary to that contract, and has been

harmed by defendants' wrongful breach and has suffered economic losses and other general and specific damages according to proof.

### G.  SEVENTH CLAIM
### [California Business & Professions Code § 17200]
### *Plaintiff v. Affirmed Housing Group and Studio 15 Housing Partners, L.P.*

50. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

51. In failing to operate and construct Studio 15 in compliance with the accessibility requirements of the Rehabilitation Act, defendants have engaged in unfair business practices in violation of California Business & Professions Code § 17200, *et seq.*, and that unlawful conduct is continuing.

52. Ford has been injured and lost money as a result of defendants' unfair business practices and seeks injunctive relief requiring defendants to operate and bring Studio 15 into compliance with the accessibility provisions of the Rehabilitation Act.

### H.  EIGHTH CLAIM
### [Negligence]
### *Plaintiff v. All Defendants*

53. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

54. Defendants injured Ford by want of ordinary care or skill in the management of their property, person, or agents in violation of California Civil Code § 1714.

### VI.  **RELIEF**

WHEREFORE, Ford prays for entry of a judgment against defendants, and each of them, that:

1. Awards actual and compensatory damages;
2. Awards statutory damages under the California Unruh Civil Rights

    Act and Disabled Persons Act;

3. Awards punitive damages;

4. Trebles the award of penalties, statutory damages and punitive damages pursuant to Civil Code § 3345;

5. Declares that defendants have violated the Fair Housing Act, the Rehabilitation Act, the California Fair Employment and Housing Act, the California Unruh Civil Rights Act, the California Disabled Persons Act, have breached their contract with the Federal Home Loan Bank of San Francisco, and have engaged in unfair business practices;

6. Enjoins all unlawful practices complained about herein and imposes affirmative injunctive relief requiring defendants, their contractors, agents, employees, assignees, and all persons acting in concert or participating with them, to take affirmative action to provide equal housing opportunities to all tenants and prospective tenants without regard to disability as required by the federal and state fair housing laws, and to bring Studio 15 into compliance with the accessibility requirements of the Rehabilitation Act;

7. Awards costs of suit, including reasonable attorneys' fees; and,

8. Awards all such other relief as the Court deems just.

## VII. <u>JURY DEMAND</u>

Plaintiff requests a trial by jury.

Dated: April 25, 2013.

            Respectfully submitted,

            LEGAL AID SOCIETY OF SAN DIEGO, INC.
            BRANCART & BRANCART

            /s/ *Christopher Brancart*
            Christopher Brancart
            cbrancart@brancart.com
            Attorneys for Plaintiff

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
JASON FORD

**DEFENDANTS**
AFFIRMED HOUSING GROUP; General Partner of STUDIO 15 HOUSING PARTNERS, L.P.; STUDIO 15 HOUSING PARTNERS, L.P.; SOLARI ENTERPRISES, INC.; and LAURA DORVAL

**(b)** County of Residence of First Listed Plaintiff: **SAN DIEGO**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
BRANCART & BRANCART
P.O. Box 686, Pescadero, CA 94060  Tel: (650) 879-0141

Attorneys *(If Known)*
**'13CV0996 W    RBB**

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Med. Malpractice | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☒ 443 Housing/ Accommodations | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Fair Housing Act, 42 USC § 3601 et seq. and related laws
Brief description of cause:
Housing discrimination on the basis of disability

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23
**DEMAND $** TBD
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE: _____
DOCKET NUMBER: _____

DATE: 04/25/2013
SIGNATURE OF ATTORNEY OF RECORD: /s/ Christopher Brancart, Cal Bar #128475

**FOR OFFICE USE ONLY**

RECEIPT #  AMOUNT  APPLYING IFP  JUDGE  MAG. JUDGE