UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON FORD,<br><br>         Plaintiff,<br><br> v.<br><br>AFFIRMED HOUSING GROUP, *et. al.*,<br><br>         Defendants. | Case No. 13-cv-996-W(RBB)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. 27]** |

  On April 25, 2013, Plaintiff Jason Ford commenced this action against the owners and operators of the Studio 15 apartment complex in San Diego, California. Defendants Affirmed Housing Group and Studio 15 Housing Partners, L.P. ("Studio 15") now move for partial summary judgment.[1]  Plaintiff opposes.

  The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d.1). For the following reasons, the Court **DENIES** Defendants' motion for partial summary judgment.

---

[1] Solari Enterprises, Inc. and Laura Dorval are defendants in this action, but are not parties to the motion for partial summary judgment.

## I. BACKGROUND[2]

Plaintiff is a person with a disability. (Compl. ¶ 4.) In June of 2012, he toured an apartment at Studio 15, an apartment complex in San Diego, California. (Id. ¶¶ 11, 18.) Plaintiff and the social worker with whom he worked to find housing told the Studio 15 rental agent that Plaintiff would need disability-related modifications to his apartment. (Id.) On June 19, 2012, Studio 15 sent Plaintiff a "Letter of Intent" signed by its manager, indicating that when Plaintiff's application was approved, he could move into Unit 132 at Studio 15. (Id. ¶ 19.) The next day, on June 20, Studio 15's manager called Plaintiff and left him a voicemail stating that his application had been approved and that he could move in as soon as July 2, 2012. (Id.)

The next day, on June 21, 2012, Monica Barraza, an independent living specialist working with the non-profit Access to Independence, called Studio 15 and "left the first of a number of messages about installing the modifications needed to enable Ford to occupy his unit at Studio 15." (Compl. ¶¶ 17, 20.) One week later, Plaintiff's July 2 discharge date from Edgemoor Hospital—a nursing facility in Santee where he had been undertaking rehabilitation—had to be postponed because Studio 15 had not made the modifications that would allow Plaintiff to move in. (Id. ¶¶ 16, 21.) Plaintiff's doctor wrote discharge orders authorizing him to be released on July 16 instead. (Id. ¶ 21.) However, Studio 15 repeatedly delayed installing modifications until Plaintiff's July 16 discharge date also had to be cancelled. (Id. ¶ 27.)

One week later, on July 19, the manager of Studio 15 told a social worker with Edgemoor Hospital that Plaintiff would not be allowed to move in. (Compl. ¶ 28.) The manager told the social worker that Plaintiff's modification request had been denied and described Plaintiff as "too disabled" and as a "high liability" as a result of his disability. (Id.) Solari Enterprises, Studio 15's management company, issued a "Letter of Ineligibility" to Plaintiff shortly thereafter. (Id. ¶ 29.)

---

[2] Plaintiff alleges the following in his complaint.

On April 25, 2013, Plaintiff brought this action for violations of the Fair Housing Act, the Rehabilitation Act, the California Fair Employment and Housing Act, the California Unruh Civil Rights Act, the California Disabled Persons Act, and the California Business and Professions Code § 17200 *et. seq.* in addition to claims for breach of contract and for negligence. Plaintiff seeks compensatory damages, statutory damages under the California Unruh Civil Rights Act and Disabled Persons Act, punitive damages, treble damages, declaratory and injunctive relief, and attorneys' fees.

Defendants now move for partial summary judgment on the ground that Plaintiff lacks standing to enforce the Housing and Urban Development ("HUD") regulations promulgated under the Rehabilitation Act, 29 U.S.C. § 794. Plaintiff opposes the motion.

Upon reviewing the moving papers, on January 21, 2013, the Court issued an Order to Show Cause ("OSC") why Defendants' motion for partial summary judgment should not be denied as calling for an advisory opinion on an issue not presented in the case. Defendants filed a response on January 30, 2014, and Plaintiffs filed a reply on February 10, 2014.

## II.  LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997), *overruled in part on other grounds by* Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

//

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. Id. at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing Richards v. Combined Ins. Co. of Am., 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970), *superceded on other grounds by* Celotex, 477 U.S. at 322-23.

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing Anderson, 477 U.S. at 242, 252). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate " 'specific facts showing that there is a genuine issue for trial.' " Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

Rule 56(a) provides for partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought."). Partial summary judgment is a mechanism through which the court deems certain issues established before trial. Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981). "The procedure was intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit." Id.

### III.  DISCUSSION

"As is well known the federal courts established pursuant to Article III of the Constitution do not render advisory opinions." United Pub. Workers of Am. (C.I.O.) v. Mitchell, 330 U.S. 75, 89 (1947), *overruled on other grounds by* Adler v. Bd. of Educ. of City of New York, 342 U.S. 485 (1952). "[T]he implicit policies embodied in Article III, and not history alone, impose the rule against advisory opinions on federal courts." Flast v. Cohen, 392 U.S. 83, 96 (1968). "The disagreement [posed in a case] must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc., 344 U.S. 237, 244 (1952) (discussing the propriety of declaratory relief). In order to avoid improper advisory opinions on

"abstract propositions of law," "a present, live controversy" must exist concerning the issues before the court.  See Hall v. Beals, 396 U.S. 45, 48 (1969).

Defendants move for partial summary judgment under the apparent assumption that Plaintiff is attempting to enforce the HUD regulations promulgated under the Rehabilitation Act, 29 U.S.C. § 794.  These regulations provide that "a minimum of five percent of the total dwelling units or at least one unit in a multifamily housing project, whichever is greater, shall be made accessible for persons with mobility impairments." 24 C.F.R. § 8.22.  The regulations further state that, "[a]n additional two percent of the units (but not less than one unit) in such a project shall be accessible for persons with hearing or vision impairments." Id.  Defendants argue that "there is no basis for finding that [Plaintiff] has standing to enforce the 5% regulation" and that "[Plaintiff] has no standing to state a claim for violation of the separate 2% set aside requirement for vision and hearing impaired tenants in 24 C.F.R. § 8.22(b)." (Defs.' Mot. 5:17–27.)

As the Court noted in the OSC:

> The Complaint mentions these HUD regulations only once and only in its introduction, in paragraph thirteen. Defendants' motion cites Plaintiff's second claim, for violation of the Rehabilitation Act, as the basis for its motion. However, Plaintiff's second claim does not invoke the regulations that Defendant cites, but rather "the accessibility requirements of the Rehabilitation Act."

(OSC 2:3–8 (internal citations omitted).)

In their response to the OSC, Defendants contend that, "[i]n addition to the allegations in the Complaint, Ford's counsel have demonstrated both in their discovery requests and settlement demands that one of Plaintiff's major litigation objectives is to privately enforce the HUD regulations." (Def.'s OSC Response 2:10–12.) Defendants cite discovery requests and correspondence with Plaintiff's counsel as the grounds for their understanding that Plaintiff seeks to privately enforce the HUD regulations codified at 24 C.F.R. § 8.22.  (Id.)

//

1    In his reply to the OSC, Plaintiff argues that "if Studio 15 had complied with the Act's command to provide access, as defined in 24 C.F.R. § 8.22, then the supply of accessible dwellings at Studio 15 apartments would have been greater, increasing Ford's opportunity to rent an accessible dwelling and negating his need for a reasonable modification." (Pl.'s OSC Reply 3:6–10.) He further contends that "Studio 15's failure to comply with the Act's accessibility requirement, as defined in 24 C.F.R. § 8.22, is closely connected to its refusal to rent to Ford or make reasonable modifications in violation of [29 U.S.C. § 794(a)]." (Id. at 3:10–16.)

In the penultimate paragraph of his reply, Plaintiff states, "[a]lthough the accessibility regulations in 24 C.F.R. § 8.22 are at issue in this case, they do not create Ford's right of action; instead, Ford sues under the Rehabilitation Act. He looks to the definition of accessibility, as provided in 24 C.F.R. § 8.22, to inform and give meaning to the Act's accessibility requirement." (Pl.'s OSC Reply 3:17–20.)  That statement effectively demonstrates that Plaintiff concedes that he is not pursuing a cause of action under the HUD regulations, 24 C.F.R. § 8.22.  Because Plaintiff concedes that he does not seek enforcement of the HUD regulations, Defendants' motion for partial summary judgment calls for an advisory opinion regarding a cause of action that is outside the scope of the operative complaint.  See Mitchell, 330 U.S. at 89.

## IV.    CONCLUSION & ORDER

In light of the foregoing, the Court **DENIES** Defendants' motion for partial summary judgment.  The parties shall proceed knowing that Plaintiff is not pursuing a cause of action under the HUD regulations.

**IT IS SO ORDERED.**

DATE: March 25, 2014

_____
HON. THOMAS J. WHELAN
United States District Court
Southern District of California